Good morning, ladies and gentlemen. Our first case for this morning will be the St. Augustine School v. Tony Evers in his official capacity, etc. Mr. Esenberg, is that how you say it? It is, Your Honor. All right. And is it St. Augustine or St. Augustine? Well, now, that is a hotly disputed theological question, which I am not prepared to answer and would not ask this Court to consider. We're not in the business of deciding theological questions. That's right. I went to a St. Augustine School, so. Oh, okay. Well, then it is St. Augustine. You may proceed. Thank you. May it please the Court. Wisconsin law provides that school districts must provide transportation to students attending private schools under certain circumstances. The law, as it has been interpreted by the Wisconsin Supreme Court, says that private schools may not have overlapping attendance areas if they are affiliated or operated by a single sponsoring entity. This case is about whether our Constitution permits school districts and the State Superintendent of Public Instruction to use a religious test, as opposed to secular considerations, to determine whether or not two schools are affiliated or operated by a single sponsoring entity. So can I tell you what confuses me about your argument, Mr. Esenberg? I certainly couldn't agree with you more that it's not the business of the courts to decide who's what. But I would have thought that the answer is to simply take the school's word for it. And indeed, as a matter of Wisconsin law, that's what the Wisconsin Supreme Court held in the Trinity case. And your approach seems to require a much greater degree of entanglement in the nuts and bolts of the way the school has organized itself than what the state officials did. The state officials said, you say you're Roman Catholic? That's good enough for us. We're not going to question it. We're not going to probe into it. That's all there is to it. So it seemed to me the take-your-word-for-it approach is the one that keeps the courts the furthest away from any kind of inappropriate religious activity. I think the problem here, though, is that the school district and the State Superintendent of Public Instruction did not take St. Augustine's word for it. St. Augustine said, we are not part of the Roman Catholic denomination. Well, not quite. We are independent. They didn't say that to the state authorities. What they said on their website and to the public is, we are a Roman Catholic school. We follow the Roman Catholic tradition. St. Augustine is an independent and private traditional Roman Catholic school, it says. And the application says, St. Augustine is an independent private Catholic school. So I don't see how they aren't just saying that. I think you can take a school's word for it, but you have to take into account, if you're going to take their word for it, everything that the school had to say. Why isn't that inappropriate entanglement? Why do you have to dig into the Articles of Incorporation and maybe the doctrine that's being taught in the classes? Is it pre-Vatican II? Is it post-Vatican II? Is it really Greek Orthodox? It seems to me that would be entirely inappropriate. That would be entirely inappropriate, but that's not what we're asking the state to do in this case. In fact, we're asking the state to take the school's word for it. Why don't you change the website? What happened in the Trinity case is they did make a change in organization. And the Supreme Court of Wisconsin said, you can't look behind that. That change is, you know, they are who they say they are. That's it. Well, the question then, Your Honor, I think would be, how is it that St. Augustine would have to change its website? Because here are the facts. St. Augustine does consider itself to be operating in what it believes to be the authentic Roman Catholic tradition, as the affidavits of Mr. Zegnego and Mr. Foro establish in this case, and they are undisputed. Twenty years ago or 30 years ago, you wouldn't have a website. Somebody would probably go to your Articles of Incorporation, and what do they say? The Articles of Incorporation say that the school district is independent, that it is stand-alone. It is not part of the Archdiocese of Milwaukee. It is not part of any order or other entity of the Roman Catholic Church. We told the Fry's Lake School District that we were independent. The Fry's Lake School District clearly understood that St. Augustine was claiming that it was Catholic in a different way. What they said in their letter of September 12th is that we don't care about that claim. It said, your claim that you are religiously distinct from St. Gabriel's is, and I quote, your fight and not ours. Well, that's right. It seems to me that's entirely appropriate. It's quite possible for there to be a Catholic school that's not associated with the Archdiocese. Again, there are a whole set of questions that I don't want us to get into, that you don't want us to get into. Do they recognize the Pope and so on? That's not our job. But I think you know that there's this difficulty in the record about whether you gave your articles of incorporation or just some other documents, a name change document, to the state authorities. The state authorities didn't look at them. I think that's pretty clear, the articles. They just looked at public statements from the school. I think if you look at the correspondence, St. Augustine said, we are independent. It listed the way in which it operated independently from the Catholic schools. It said that it enclosed its articles of incorporation. Now, in the district court, the defendants claim, well, we never got the articles of incorporation. But if you look at the correspondence between the parties, St. Augustine repeatedly told the defendants what those articles said and it represented that it was enclosing them with the letter that it sent. There's a problem in the record there. Can I back up and ask you maybe a couple of broader questions? Is it your position that it is unconstitutional for the state, for any state here, the state of Wisconsin, in any way to group religious institutions? So it would be unconstitutional, I take it, in your view, if there were an Orthodox Jewish school and a Reformed Jewish school and a Sephardic Jewish school to say we're going to have a Jewish school. And you would say, I assume it's unconstitutional if there was a Presbyterian Church of the USA school versus a United Presbyterian Church school, that that can't be grouped, even though they're both Presbyterian. And certainly not that you couldn't group Protestant or Evangelical schools in one group versus the Episcopalians in a different group. So each Evangelical congregation may feel that it's a distinct entity. So every single one of those, the state is in no way allowed to group them together for busing routes or for anything else? The state could group them together if it did so based upon some secular consideration. That is, if it could show that there is some legal, managerial, operational, organizational affiliation. Let's assume all of that. They all have their own separate articles of incorporation. Then it seems to me that the only way the state could be grouping them together is by imposing a religious test on them. But that's exactly what the Wisconsin Supreme Court in the Vanko case avoided by saying, no, it's actually just a group. So if you had, well, the example the district court gave was the Montessoris, but if you had some other kind of, let's say the Noble Network, which is a network, a private organization that runs charter schools in Chicago. Suppose they decided, well, we're tired of charter schools. We're just going to run a network of private schools, and they're going to be the Noble Network schools. So as I understand the Wisconsin Supreme Court's position in Vanko, only one Noble Network school gets the busing, the first one out of the box, because it's the same organization. Right. And so why not just one? But at some level, I guess what I'm trying to figure out is where do you want courts to be deciding who's a bona fide religious denomination or sect, and to what extent not? I don't want courts to decide that. But that's what you're asking us to do. You're asking us to say you're a different denomination of Roman Catholicism We are not asking you to decide that. We are asking you to do the same thing that we are asking the school district and the state superintendent of public instruction to do, and that is to accept our claim of religious distinction. And there's a long tradition in our law. The courts do not make religious decisions. They do not decide whether someone who claims that their religion compels them to do A, B, or C is sincere or not. No, of course. Or whether the belief is real. I totally agree with that. And so, Your Honor, when St. Augustine comes in and says, we are independent and religiously distinct, the appropriate response is not for the Fry's Lake School District to say, that's your fight, not ours. It's for the Fry's Lake School District to accept what they say and then ask. Can you have a Roman Catholic school that is not subject to Archdiocese control? We have one here. The record is undisputed that St. Augustine is not subject to Archdiocese control. No, my question to you again is, can you have a Roman Catholic school not subject to Archdiocese control? Yes, because St. Augustine claims to be operating in the authentic Roman Catholic tradition. Now, we can disagree as to whether they are or not, but once we start to do that. That's not our job to make that determination, but my question to you is that you're claiming to be a Roman Catholic school, but you disclaim any connection with the Archdiocese. That's right. Mr. Esenberg, I'd like to take the conversation on a slightly different tack. The district court had before it both a federal claim and a state claim. It decided that it would not hear the state claim, because it involved, in its words, a complex issue of state law, and that it would not exercise supplemental jurisdiction, but remand that to the state courts, and it proceeded to determine the federal claim. That sounds backwards to me. Isn't it quite clear from the earlier two cases that the Wisconsin Supreme Court could construe the state statute in such a way as to decide this case? I have thought about that, and we, of course, brought this case in state court in the defendant's removal. Right. No one asked the district judge to stay the federal claims while the state claims were considered. But that's his responsibility. He could have done it sui spondi. He did not. And I can't speak for the district judge. I can only say this. It is not clear, in fact, formally it is not true, that resolution of the state law claim would eliminate the federal claim, because if in fact- Why is that? If you got busing under the state law theory, the judge clearly, as I read his opinion, thought it was possible that you might have what he regarded as greater rights under the state law than under the federal law. He was using kind of an employment division versus Smith approach to the federal law. And if you got the transportation services that you want as a result of state law, what do you care about? Federal law. State law can do more. As I said, formally the federal claim would still be there. Why? Other than an advisory way. I don't understand. Well, because the question would be whether the plaintiffs wish to pursue their federal claim under Sanction 1983 to obtain damages and attorney's fees. They might well decide not to do that. But that's not the kind of thing that the Supreme Court worries about when we're doing allocations. It recognizes in many contexts that there may be some procedural differences between state and federal law, such as the availability of attorney's fees. But that doesn't mean that we wouldn't defer to a state court forum. Right. But the federal claim would still exist. I would concede that it would certainly be possible for the federal district judge, and it would be possible for this court, to decide that he erred, to vacate the judgment, to remand the case to district court with instructions to stay the federal claim while the state law claim proceeds. And that may very well decide the case, although I don't think it would eliminate the federal claim. I see my white light is on. I'm happy to respond to any questions now. Otherwise, I'll save the remainder of my time for rebuttal. Judge Ripple, is that all right? And I'm happy to return to the follow-up. Well, I think you stated your position. It sounds to me like you're asking us to give the Wisconsin Supreme Court an advisory opinion about how they have to interpret state law. No, we're not at all asking that. We don't think that this court should pass upon the state law claim at all. What is before this court is the federal law claim, that if state statutes actually authorize the state of Wisconsin to use a religious test to decide affiliation, that violates, that would violate the federal constitution. It is certainly possible for this case, this court, to decide that it wants to avoid that issue, vacate the judgment, and wait for the state court to weigh in and see if the case is still here. I don't think that there would be qualified immunity, because in this case I think that the defendants knew precisely what Vanco and Holy Trinity said. Those are state-wide decisions. That wouldn't have anything to do with 1983. And they knew precisely what the law required. And in fact, I think, in saying that this is your fight and not ours, they injected them right in the middle of that fight. They may have thought, though, that they were trying to stay out as much as possible by saying that. I really feel for them from a qualified immunity standpoint. Maybe you can address this more in your rebuttal, if you would like to save a bit of time. I will do that. Thank you. All right. We have Ms. Pierre and Ms. Variel. May it please the court. My name is Kristen Pierre, and I represent the respondent, the Freeze Lake School District, in this matter. The Freeze Lake School District complied with its obligations under the Wisconsin statutes with respect to making a determination regarding St. Augustine's proposed attendance area. As the court has just addressed, the district's decision-making procedure was in line with the Wisconsin Supreme Court's construction that they had given in construing the constitutionality of these statutory provisions. Specifically, the Vanko decision, the earliest decision in interpreting this case from the Wisconsin Supreme Court, maintained denomination as a required consideration in determining whether two schools could have overlapping attendance areas within the same district. So you're saying, essentially, that the first question is, can the state group, can the school district, which is responsible for paying for student transportation, give kind of one organizing entity the right to one school, or is the state required to have a very large number of transportation, or payments, I understand. This is about a $1,500 per year payment for the transportation costs. Correct. Under the definitions in the statute, a school district is not permitted to approve an attendance area for a private school if that proposed attendance area or multiple proposed attendance areas overlap for school systems operated under the same system, or religious schools affiliated or operated by either a single sponsoring group or denomination. So by adding the word denomination to sponsoring group or the other language that you just gave, is that what takes you beyond the articles of incorporation? Because there is this messy issue. What's your position about the availability of those articles of incorporation for the school district officials? First, we would maintain that the articles of incorporation were not the true original articles of incorporation for St. Augustine School, which was actually incorporated as the Neosho Country Day School, were never presented to the district as part of the application. Wait, wait, wait. Go ahead. Maybe I interrupted you. That's fine, Your Honor. I was just going to reiterate that even had the district received those articles of incorporation, which do state that it was, I believe, an interdenominational religious school, they would have been outdated and in conflict with the specific express representations that St. Augustine School put in its application for an attendance area, which stated in spring of 2015 in their April letter that it was a Roman Catholic school. So it's not just the website. It's the application itself presented to the school district that says Roman Catholic? Yes. The letter that St. Augustine sent in, there is one initial letter in March of 2015 and then a follow-up letter dated April 27th of 2015. And in that April letter, St. Augustine School specifically presented to the district that it is a Catholic school. So they didn't have to say that in that letter if they hadn't wanted to. They could have copied the language from the original articles of incorporation and said St. Augustine School is an interdenominational school. They could have written down whatever they wanted to, but they wrote down that they were Roman Catholic. Correct. They made a specific representation to the school district. One, that the district, this is a small school district. It's seven square miles. There's only two Catholic schools in the district and then the public school. So the district officials generally have institutional knowledge regarding the nature of these two schools. But aside from that, they had specifically represented to the district that they are operating a Catholic school, that that's what St. Augustine School is. Catholic school or Roman Catholic school? Their letter specifically says a traditional Catholic school. That's not Roman Catholic. It's the district's position that a representation of Catholicism is Catholicism and it's not the district's position, as Mr. Essenberg has argued, to make a determination of who or what is Catholic. The district is not in a position... So if there were a Greek Orthodox school, you'd jump that in with the Catholic? In the district's understanding of denomination under the definition of attendance area, Catholic is Catholic. You're in a problem now of trying to make religious determinations. We're not attempting to, Your Honor. Well, you have to make that, you have to get into it to some degree to make these determinations. We believe that by accepting the school's representation at face value that it is a Catholic school, knowing that we have another Catholic school whose attendance area comprises the entirety of the district, that under the statute and as interpreted by the... Does your other school describe themselves as Catholic? Or Roman Catholic? Yes, St. Gabriel's is Catholic school. Not Roman Catholic. Well, they are... It's our understanding that they are a Roman Catholic school based on the publicly available information on their website. Well, as is St. Augustine. So you would have a terrible problem if we rolled the historical clock back to the days of the Avignon Pope and the Rome Pope where you would have to figure out who was actually Catholic because there was a lot of, as you will remember, a lot of schturm und drang about that. But I would, to take Judge Kaney's example about Eastern Orthodox or Russian Orthodox, it would surprise me if somebody described themselves as anything but Eastern Orthodox or Serbian Orthodox or Russian Orthodox or whatever. I don't know that they call themselves Catholic without further adjectives. Looking at the facts... Look, even in the Presbyterian Church, they talk about the Holy Catholic Church and it's certainly not because Presbyterians do anything. What are you going to do with your Lutheran, if one of your Lutheran congregations in your district opens a school? Our understanding is that Lutheran is a different, distinct denomination of Christianity and that that Lutheran school would be entitled to its own attendance area. My understanding is there are Lutherans, Missouri-centered and Evangelical Lutherans and they don't agree on a lot. And whether or not they agree on many things under the auspices of being a Lutheran faith is not a decision for the district to make. You're just going to lump them all together, make them all ride the same bus, right? We believe that that is our mandate under the Wisconsin statute in accordance with the Vanco and Holy Trinity decisions. Well, you don't know that, do you? You don't know what the Wisconsin statute requires you to do. We do believe that we do, based on the Vanco decision, which was very clear in discussing the various organizations... Didn't it have the Jesuits versus somebody else in Vanco? Yes, in their discussion in Vanco, the court discussed the concept of different organizing entities under the Catholic faith who may or may not operate multiple schools within various school districts. And the court's description in the Vanco decision was that those two would all fall under the umbrella of Catholicism. So you're disagreeing with the district judge. The district judge says Vanco doesn't resolve them and Holy Trinity don't resolve the problem before. There is still a viable question of state law. I don't... I believe that there could be a question as to whether the... In other cases, not germane to the facts of this case, whether those cases resolve every possible question as to private schools operated by different religions. In this case, we believe that we upheld the constitutionality of this statute by applying it in the way that the Wisconsin Supreme Court had construed it to be constitutional. Well, of course, obviously, you're not going to take the position that there was a big issue under state law because you're defending what the school district did. So, I mean, it seems to me you're essentially saying we're comfortable with our defense. Obviously, if the district judge or your opponents think there's an issue, maybe somebody disagrees with you. But I'm not terribly surprised. Who removed this case to the federal court? The defendants did remove the case to federal court because of the Section 1983 claims. We believed it was more appropriate for an Article III court to address those federal questions. You weren't going to rely on the state court to give you... You thought state law resolved the issue. Why didn't you go and stay in state court or apply Venko and Holy Trinity? One, because of the appellant's federal law claims. Again, we thought that a federal court would be more appropriately suited to address those specific 1983 claims. Supreme Court has said there's concurrent jurisdiction under 1983, both federal and state court. In this instance, based on... In this instance, based on the nature of the appellant's First Amendment claims under free exercise in the Establishment Clause, given the potential ramifications of that decision, we felt that federal judges or a federal judge would be better suited to decide the Section 1983 claims. We do not object to the district court remanding the state questions back to state court. Even though the question of what bus transportation you have to provide could be decided very easily as a matter of state law by a state court. We believe that we have complied with the state statutes and that either the federal court or the state court could make that determination, but there were additional claims that were brought with this. We believe that in following the state courts... Such as? The First Amendment free exercise claim and the Establishment Clause claim that the appellants brought. And I believe that our briefing adequately addresses why those also must fail, but I see that my time is up. If the judge has questions, then you should answer them. Did you have anything else? No. Thank you. All right. Thank you. Of course. Thank you very much, Ms. Pierre. Ms. Variel. May it please the court, my name is Laura Variel, here representing the Wisconsin State Superintendent of Public Instruction, Anthony Evers, in his official capacity. I think it's important for us to first realize how the state superintendent became involved in this case. The St. Augustine School and the Freeze Lake School District jointly, together, asked the state superintendent to review the case because they could not decide on an attendance area. Under state law and administrative code, he asked both parties to submit all the information they wanted submitted, and he reviewed the information in accordance with the known statute and case law. By the way, the information submitted by St. Augustine did not include the original articles of incorporation for the Neosho Country Christian School, and in fact, everywhere that was ever referred to as the articles of incorporation, what was submitted was the articles of name change that just changed the name to St. Augustine School, Inc. The appellants are not... The articles of incorporation are public documents, aren't they, in Wisconsin? They are. So the court could have taken judicial notice of the articles. They didn't have to be submitted. Well, according to the rules that govern appeals at the state superintendent level, we ask for you to submit your evidence, and we look it over, and we decide based on that. So actually this is not uncommon. I mean, public documents are regularly submitted in court in response to discovery requests. They're submitted in immigration proceedings, and if the parties have the responsibility of scouring the public record, it's not usually the responsibility of the public official to go out and re-scour the record to see if the parties missed something. Correct. The state superintendent did not believe he should be making further inquiries. He did not believe that he should be scouring, making open records requests of other state agencies for documents that they possessed. He didn't feel it was necessary. The parties submitted what they wanted looked at. They submitted their mini-briefs, their positions, and that is what he made his decision on. So is the real issue in this case whether the Wisconsin Statute 121.51 violates the free exercise clause because it doesn't permit for either transportation or reimbursement of transportation expenses to every single denomination, every single school within an intended zone, whether it's the two different kinds of Lutherans or whether it's the two different kinds of Presbyterians or whether apparently here it's the two different kinds of Roman Catholics or whether it's various types of Jewish faith groups. So are we really being asked to decide whether the state of Wisconsin can limit the duty to provide transportation as it has done in 121.51? I don't believe so, Your Honor. The appellants have been very careful to not challenge the constitutionality of the statute. This is an as-applied case, and they've been very careful to only challenge how the state superintendent and the school district applied this case. And the Wisconsin State Supreme Court found the statute to be constitutional. That's what the defendants were operating under when they applied that law, and the state superintendent had a duty to apply that law to this decision, and that's what he did. Well, I mean, it's a generally... As construed in Vanco, it's a generally applicable law. I mean, the Wisconsin Supreme Court was very sensitive to the fact that you couldn't just single out religion for a lesser quality of transportation support, so they went by group. So is it your position that the reason we're not worrying about the free exercise clause because it's a neutral and generally applicable rule as Employment Division against Smith describes such things? Yes, I believe it's neutral, generally applicable. It's a first-come, first-serve, and public schools are also treated to having an attendance area. Private schools are treated as having an attendance area. Would it have made any difference if the St. Augustine, I'll call it, rather than St. Augustine, that was submitted were a private, non-denominational school? Well, what the appellants are asking the court to say is that even with institutional knowledge and with letters that say we are a school operating in the traditional Roman Catholic... or in the Roman Catholic tradition and calling themselves a traditional Catholic school, that if they send you a piece of paper, whether outdated or not, that says in 1991 we were incorporated as an interdenominational school, that that's all you can go by. You must forget everything else that we've told you. You must just look at that. And they talk out of both sides of their mouth because for the free exercise claim, they are claiming... Well, I would disagree that they're not consistent in what they've said. They're part of the incorporation. Don't meet with what they had on their website. Right. Or their application. And they're saying, please recognize that we're a different brand of Catholic. We're very different. We have the right and free exercise to pursue this brand of Catholicism over this other brand of Catholicism. Which they certainly can. The question is... Absolutely. Well, there's only one brand. Well, maybe not. Well, had to talk with Maimon Senior about it. And then on the other hand, what they're saying is under the Establishment Clause, you can't look at all at whether or not we're Catholic. I don't know how we reconcile those two things. When was this statute enacted? Pre-Vatican II? No. In 1967 is when the state constitution was changed to allow busing to private schools, and this came shortly thereafter. Sort of an academic question. So I want to go back, though, to... Maybe it's not a problem in this case, but there will be cases in which simply to apply the statute will put whether it's the state superintendent or the school district in the position of trying to decide where is there a line between denominations. I'm not qualified to say, but, you know, maybe some people think there's only one Roman Catholicism, period, end of discussion. Maybe there are different approaches, I'll just say, to that. Certainly in the many Protestant sects or in Islam, there's Sunni, there's Shia, there's other things. In Judaism, there are different schools or different denominations. So here, I mean, what the school district said is, as far as we know, there's just one Roman Catholic and this is it. So let me ask you this question. Suppose in a kinder and more wonderful world that we don't seem to live in, St. Augustine and St. Gabriel said, look, we both have our own approach to Roman Catholic, but let's just create for this little tiny seven-square-mile school district one bus route, and we'll have the buses pick up the kids to both schools, and there will just be two drop-off points. Would that violate the state statute? I believe it would violate the state statute as written, because it says, shall not overlap. So the fact that there are two drop-off points in this itty-bitty piece of land is fatal. Well, I don't think it's the two drop-off points, per se, because in a bigger city, a city like Madison or Milwaukee, we have many Catholic schools, we have many private schools, et cetera, and there are bus... But they're probably attendance zones. They are attendance. I mean, there are many, many Catholic schools in Chicago as well. And they receive attendance zones that do not overlap. However, that doesn't mean that they didn't combine bus routes that picked up from similar places and then dropped off at similar places. I just want to state that this case, there's no remedy that's available against the state superintendent in his official capacity, as he is not a person under 1983 for damages purposes, and as this was an appellate review-type situation, a quasi-judicial review, there's no reason for an injunctive relief. And this should really have been brought as a 227.52 judicial review case, because what they're really saying is, we disagree with how you applied the law. And the statutory scheme for that is to do a judicial review. But instead, they decided to bring federal constitutionality claims for the exact reason that they stated, which is they wanted attorney's fees and damages, which are not allowed. Counsel, with respect to your obligation to provide bus transportation going forward, the district court seemed to believe that state law was still unclear on precisely how you were to determine whether you needed to give these folks bus transportation. I gather from her remarks that your colleague thinks that state law is clear, that there's a disagreement between the school district and the district judge on that. What is the view of the state of Wisconsin? The way I read the district decision, the district court's decision, is not that there's necessarily a problem with the way it was applied. Because he did go through so much of the analysis of the state law claims in order to analyze the federal law claims. And he seemed to agree that the district and the state did do what they needed to do, and therefore that's why there's no federal law claims that need to be decided. But he did say there could be a misapplication of the law. So I think there was a slight distinction between I don't know what the state law is saying versus there's a possibility that they could read it differently. And I believe he got it right. As good a possibility as they're not, given the two earlier opinions, that your state Supreme Court is going to say, if they got a first crack at this thing, look at the articles of incorporation and follow them, period. End of case. There's always that possibility. I do not feel that the Holy Trinity case is very dispositive here because it's the... That's what I was getting at. Yeah, it's a very, very, very different set of facts. And they said their holding was in these set of facts, the state superintendent went too far. All evidence pointed to the fact they had separated from the Catholic Church. And that's apparently why the district court in this case thought there was still an ambiguous state issue in the case, right? Yes. But if we got that resolved, we'd know what to do, at least going forward, right? By the state courts. State courts could very easily say, this is how we construe the state statute. Yes. What we have right now is this is what definitely will get you in trouble. We don't know the very broad other areas of things that might get you into trouble. The other thing we have is two quite responsible state court decisions trying to resolve really an intractable problem in our polity by keeping the state in a situation where it can supply services but stay away from the hot topic of religion, right? Correct. It's shown some sensitivity. It definitely tried. Why shouldn't we trust the state court to do the same if it had gotten the first crack at this? Well, I believe the state court should have reviewed the application of the law under the judicial review. That is not how the appellants chose to file it, and because there was the – My question to you is, instead of deciding the constitutional issue, why didn't the district court abstain and allow you to take the state issue to the state courts and resolve it? I cannot answer what the district court did. And why shouldn't we tell them to either do that or I guess we could certify the issue ourselves if we cared to. There are all sorts of practical reasons as to why one of those might be better than another, but putting that aside. Shouldn't we know what the state court thinks about this? I don't think you need to know what the state court says about this in order to resolve the constitutional issues. I think the district court got it right when it said these are not – they did not violate the Constitution. The constitutional issues are disposed of. Now let the state court handle the state court issues. But my point is maybe we don't need to resolve the constitutional issues to resolve the case. Well, I think that's clear by the remand of the state issues. State court could resolve this whole case, decide who's going to get what, bus transportation, that's it. Yes, but there would still be hanging out here the constitutional issues, and we would prefer that the federal court decide whether or not there are constitutional issues. Lisa, you're concerned if the state court says no duty, as you will urge them to say, then the federal constitutional issue remains. Right. And we're re-litigating it at that point. I had one. Are there any other states that have the type of statute allocation in this bus transportation as Wisconsin? Well, that's not in the record. However, I do know that many states do the same kind of – if you are busing, you bus to both private and public schools. And then there are other states like Missouri that say we're not busing to private schools at all. But, I mean, this seems to be a fairly complicated and requires you to get into areas that were – Of discomfort? Yes. But let me also add that, although the context is quite different, in other areas of the First Amendment religion clauses, states regularly group denominations. So, for example, for purposes of religious services in prisons, they do it all the time. Now, I'm not saying schools are like prisons, although some students may disagree. But the states have not thought that those practices were unconstitutional. Correct. All right. Well, I think that will do it. Thank you. And Mr. Esenberg, it's your turn again. If we accelerated the historical clock and if the Avignon Papacy established, let's say, St. Augustine's School and the Rome Papacy established, let's say, St. Gabriel's School, we would not argue, and it would be inappropriate for the state to decide which school is truly Catholic. It would be inappropriate for the state to say the school established by the Rome Papacy is the one that we're going to recognize. It would be inappropriate for the state to say Catholic is Catholic and anyone who uses the Roman Catholic moniker, as Freislich put it in this case, must affiliate in a single school system. But your principle, though, really does take us to the point. This is very expensive for the schools. I mean, I see no... I don't have any trouble understanding why they wanted to do this. Whether they can do this, obviously a different question. But I think your approach means that, for example, every evangelical school within this little seven-square-mile district either gets its own transportation or this $1,500 a year paid over to the parents. And for budgetary reasons, this first-come, first-serve approach probably has its attractions to the school district. To say to St. Augustine School that you can't use the Roman Catholic moniker, you must affiliate with the official Roman Catholic church... They don't have to affiliate. They just don't get the busing. ...because we want to save money would be a violation of the free exercise clause. No, no, no. We would be making a religious judgment. Well, so the same thing would be true for the Lutherans and the same thing would be true for everybody. I'm just saying that you are taking the atomistic approach, and that's why the question of the constitutionality of the state law, which you did not raise, is perhaps the real question here because there are always going to be borderline issues as to when somebody is within a denomination and when somebody has sufficiently distinguished itself or themselves to be a separate denomination. This is the history of religion. There have been splinterings. There have been rapprochements. There have been different kinds of things, and the Wisconsin statute, as worded, requires a threshold determination who's in and who's out of a denomination, but you did not attack that. You just said, we get it that there are denominations, but... that it's not the business of the state to evaluate these splinterings. So in other words, you're saying that there can't be denominations then, under your view. It can decide who's within a denomination as long as it does so on the basis of secular connections. It could be the articles. It could be something else, but it can't be a religious affinity. It can't be a theological judgment that Catholic is Catholic. Well, it's not making a theological judgment. It's just saying you said you were Catholic. Why didn't you put something different in your application? Why couldn't you get, you know, tomorrow reimbursement? Because I think to say... Because you want to say... You don't want to say in your application what your articles of incorporation say. If you had just lifted that language from your own articles of incorporation and put it in your application... You did. No, no, you didn't. You didn't say we are interdenominational. You described what the articles of incorporation said in the letter that we sent to... I'm sorry. To... You did not. Your application says, St. Augustine is an independent private Catholic school. If instead of saying independent private Catholic school, you had lifted the phrase from your own articles of incorporation and said an independent private interdenominational school, you would not be here today, your clients would have saved a lot of money, and the children would have gotten transportation services. Well, I see that my light is on. But you don't want your own language in the application. I see my light is on. You can certainly respond, of course. My response would be that we said much more in our application. We also said and listed in detail the ways in which we are independent and unconnected with the Roman Catholic denomination. It seems to me what the defendants are doing here is they're saying we heard the word Catholic, and because we heard the word Catholic, we needn't listen to anything else. Now, they needn't evaluate. They can't evaluate anything else, but they have to accept it as true. Right, and as Judge Ripple said, this is a very delicate issue of public policy to avoid the Lemon v. Kurtzman excessive entanglement, which, by the way, is not the only part of the Lemon test. I'm not sure your theory is solid there. But to avoid entanglement, you can't look into all these things, and yet you want your cake and eat it too. You want this evaluation. We do not want this evaluation. They have to accept a claim of religious distinction. They can't evaluate it, and they can't decide to ignore it because if they decide to ignore it, if they say that your claim that you are religiously distinctive is your fight and not ours, they're effectively deciding that. They're deciding that in Frye's Lake, it's St. Gabriel's that gets to be the church that operates in the Catholic tradition. And to say that we ought not to use the word Catholic is to sort of impose a religious judgment on us. Okay, I think we have your point. You've said that before, so thank you very much. Thanks to all counsel. We will take this case under advisement. Thank you.